UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,

-vs-                                 Case No.  5:14-cv-17-Oc-10PRL

LORI J. HUNTER, STEPHEN C. HUNTER,
and DALE SCOTT HEINEMAN and KURT
F. JOHNSON, as Trustees of the Hunter
Family Trust,

                Defendants.

_____

## O R D E R

      This is an action by the United States of America, pursuant to 26 U.S.C. §§ 7401 and 7403, to reduce to judgment the unpaid federal income tax liabilities and civil tax penalties of Defendants Lori J. Hunter and Stephen C. Hunter.  The Government also seeks to foreclose federal tax liens against real property belonging to the Defendants, and to sell the property and apply the proceeds to the Defendants' outstanding federal tax liabilities (Doc. 1).

      The case is presently before the Court on the United States' Combined Motion for Summary Judgment Against Defendants Lori J. Hunter and Stephen C. Hunter, and for Default Judgment Against Defendants Dale Scott Heineman and Kurt F. Johnson (Doc. 41).[1]  Lori J. Hunter and Stephen C. Hunter have filed a response in opposition (Doc. 43),

_____

[1]The United States' motion and reply list in their captions as a party-Defendant "The Hunter
(continued...)

and with leave of Court (Doc. 46), the United States has filed a reply brief.  Dale Scott

Heineman and Kurt F. Johnson, have not filed a response to the motion, never answered

the Complaint, and a Clerk's default was entered against both of them on October 8, 2014

(Doc. 29).

Having considered the arguments of all Parties and the undisputed record evidence,

and for the reasons set forth below, the Court finds that the United States' Motion is due

to be granted in its entirety.

## Undisputed Material Facts[2]

On October 5, 1978, Defendants Lori J. Hunter and Stephen C. Hunter, husband and

wife, took title to a parcel of real property by Warranty Deed, located at 10071 S.E. 110th

Street, Belleview, Florida 34420 in Marion County, Florida (the "Subject Property").  The

Warranty Deed was recorded in the official record books of Marion County, Florida that

same day.  On July 7, 2004, the Hunters purported to convey title to the Subject Property

by quit-claim deed to Dale Scott Heineman and Kurt F. Johnson as Trustees of the Hunter

Family Trust.  The deed was recorded in the official record books of Marion County, Florida

---

[1](...continued)
Family Trust" (Doc. 41, p. 1, Doc. 47, p. 1).  It does not appear, however, that the trust is a legal entity apart from Heineman and Johnson as Trustees of the Hunter Family Trust.  Accordingly, the trust will not be treated as a separate party-Defendant.

[2]Because the Defendants have not submitted any affidavits or other evidence establishing any material issues of disputed fact, see Fed. R. Civ. P. 56(e)(2), the Court adopts the United States' statement of undisputed material facts contained in its motion for summary judgment (Doc. 41).  The Court has also made its own independent review of the record evidence and finds that the United States' recitation of undisputed facts is supported by the record.

on July 7, 2004.  Neither Trustee paid any meaningful consideration or gave anything of reasonably equivalent value in exchange for the Subject Property.  The Hunters continue to live in the house on the Subject Property, and continue to pay for expenses and maintenance associated with the Subject Property as though the conveyances in trust had never occurred.

The Hunters failed to pay their federal income taxes for several tax years between 1997 and 2009.  They consistently failed to file income tax returns, and Mr. Hunter has filed several frivolous tax returns.[3]  As a result, a duly authorized delegate of the Internal Revenue Service ("IRS") made assessments against Stephen C. Hunter and Lori J. Hunter, individually, for federal income tax liabilities, penalties, and interest.

## A.    Assessments Against Stephen C. Hunter

Mr. Hunter failed to timely file federal income tax returns for the tax years 1997, 1998, 1999, 2000, and 2003.  As a result, the IRS calculated his federal income tax for these years, and once the restrictions on assessment of these liabilities lapsed, the IRS made assessments against Mr. Hunter for the tax years 1997-2000 and 2003 for unpaid federal income tax liabilities, penalties, and interest in the following amounts:

| | |
|---|---|
| 1997 Tax Year: | $53,345.31 (assessed between April 5, 2004 and February 28, 2005) |
| 1998 Tax Year: | $3,109.88 (assessed between June 7, 2004 and January 10, 2005) |

---

[3]Mr. Hunter is currently serving a ten-year prison sentence for tax related crimes.

3

| | |
|---|---|
| 1999 Tax Year: | $1,723.25 (assessed between April 12, 2004 and August 16, 2004) |
| 2000 Tax Year: | $23,928.29 (assessed between February 23, 2004 and August 16, 2004) |
| 2003 Tax Year: | $12,872.94 (assessed on October 1, 2012) |

(Doc. 41, Exs. A-1 through A-6).

A duly authorized delegate of the IRS also made assessments in the amount of $1,090.81 against Mr. Hunter for penalties and interest pursuant to 26 U.S.C. § 6702 for frivolous tax submissions for the tax period ending December 31, 1997. The assessments were made from February 5, 2001 through July 11, 2005 (Doc. 41, Exs. A-1 through A-6).

The IRS gave Mr. Hunter notices of the assessments and made demand for payment of the assessments. Despite receiving the notices of the assessments and demands for payment, Mr. Hunter has failed and refused to pay the amounts assessed against him. As of May 27, 2015, Mr. Hunter owes the total sum of $146,080.79 plus accrued penalties and interest.

## B.    Assessments Against Lori J. Hunter

Mrs. Hunter also has a long history of non-compliance with the federal tax laws, and failed to timely file federal income tax returns for the tax years 1997, 1998, 2000, 2002, and 2003. For the tax years 2004 through 2009, Mrs. Hunter filed tax returns, but she failed to pay the tax that she reported was owed. As a result, once the restrictions on assessment of these liabilities lapsed, the IRS made assessments against Mrs. Hunter for the tax years

4

1997-1998, 2000, and 2002-2009 for unpaid federal income tax liabilities, penalties, and interest in the following amounts:

| | |
|---|---|
| 1997 Tax Year: | $20,014.28  (assessed between November 22, 2004 and May 30, 2005) |
| 1998 Tax Year: | $96,132.61  (assessed between September 15, 2003 and February 14, 2005) |
| 2000 Tax Year: | $20,917.25 (assessed between June 3, 2004 and November 29, 2004) |
| 2002 Tax Year: | $19,825.01 (assessed between January 12, 2004 and September 5, 2011) |
| 2003 Tax Year: | $215.67 (assessed between June 14, 2004 and July 12, 2004) |
| 2004 Tax Year: | $9,808.09 (assessed September 26, 2011) |
| 2005 Tax Year: | $27,360.31 (assessed October 11, 2011) |
| 2006 Tax Year: | $26,748.47 (assessed October 10, 2011) |
| 2007 Tax Year: | $9,692.06  (assessed  July  18, 2011 and August 15, 2011) |
| 2008 Tax Year: | $17,942.36 (assessed June 27, 2011) |
| 2009 Tax Year: | $10,337.45 (assessed June 27, 2011) |

(Doc. 41, Exs. C-1 through C-10).

The IRS gave Mrs. Hunter notices of the assessments and made demand for payment of the assessments.  Despite receiving the notices of the assessments and demands for payment, Mrs. Hunter has failed to fully pay the assessments for tax years 1998, 2000, 2002, 2003, and 2004 through 2009.   She has paid her federal income tax

5

liability for 1997.  As of May 27, 2015, Mrs. Hunter owes the total sum of $271,348.57 plus accrued penalties and interest.

## C.    Mrs. Hunter's Payments

Starting on or about June 28, 2012, Mrs. Hunter and her representative, George Ortiz, approached IRS Revenue Officer John Hoopes to discuss making payments towards her tax liability.   Hoopes determined that Mrs. Hunter could afford to make monthly payments in the amount of $1,000; however Hoopes refused to enter into an installment agreement with Mrs. Hunter unless and until Defendants Dale Scott Heineman and Kurt F. Johnson were removed as the purported trustees for the Subject Property.   It is undisputed that the IRS and Mrs. Hunter never entered into an installment agreement. Instead, Mrs. Hunter began to make voluntary payments of $1,000 per month, beginning in July 2012.  The IRS has credited those payments towards her tax liabilities and they have been reflected on her account and transcripts.

## D.    Federal Tax Liens on the Subject Property

The Hunters were aware of their outstanding federal tax liabilities at the time they attempted to transfer the Subject Property to Heineman and Johnson, because the IRS had already made assessments for unpaid taxes and contacted the Hunters about their failure to file tax returns.

Because the Hunters failed or refused to pay the tax liabilities for the tax years described above, the IRS recorded Notices of Federal Tax Liens in the public records of

Marion County, Florida against both Stephen C. Hunter and Lori J. Hunter for each of the assessments described herein.  (Doc. 41, Ex. E).  On January 27, 2012, the IRS filed Notices of Federal Tax Liens in the official records of Marion County, Florida against "D. Scott Heineman and Kurt F. Johnson, Trustees of the Hunter Family Trust, as nominee of Lori Hunter," and "D. Scott Heineman and Kurt F. Johnson, Trustees of the Hunter Family Trust, as nominee of Stephen C. Hunter" for each of the tax years at issue (Doc. 41, Ex. H).

## Procedural History

The United States initiated this action on January 10, 2014 through the filing of a complaint seeking to reduce its tax assessments to judgments against the Hunters and to foreclose on the Subject Property (Doc.  1).  Service of process was effected upon all four Defendants between March 13, 2014 and April 9, 2014 (Docs. 5-7, 9).  On April 9, 2014, attorney Justin Infurna filed a Notice of Limited Appearance on behalf of all Defendants (Doc. 8).  Mr. Infurna filed an Answer on behalf of the Hunters on May 7, 2014 (Doc. 17).  No answer or other response has ever been filed by the other Defendants Dale Scott Heineman and Kurt F. Johnson; however, Johnson filed a *pro se* "Bill Quia Timet As Affidavit" on April 24, 2014 stating that he is in federal prison and unable to obtain the supplies necessary to answer the complaint (Doc. 15).

Due to the lack of response by Heineman and Johnson, the United States moved for entry of a clerk's default on August 1, 2014 (Doc. 21).  However, at the time of the United

States' motion, Mr. Infurna was still listed as the attorney of record for Heineman and Johnson as Trustees of the Hunter Family Trust.  Neither Heineman or Johnson responded to the motion for clerk's default, and on August 27, 2014 the Magistrate Judge conducted a hearing on the motion to ascertain the nature of Mr. Infurna's representation of the Defendants (Doc. 23).  On August 29, 2014, the Magistrate Judge issued an order directing Mr. Infurna to file a a written response explaining if and for what period of time he represented Heineman and Johnson, if and when he conveyed to them that he no longer represented them in this case, and directed Mr. Infurna to send a complete copy of the case to Heineman and Johnson (Doc. 25).

Mr. Infurna complied with the Magistrate Judge's order (Doc. 26), and on September 4, 2014, the Magistrate Judge relieved Mr. Infurna of all further responsibility for the representation of Heineman and Johnson as Trustees of the Hunter Family Trust (Doc. 27).  The Magistrate Judge noted that Heineman and Johnson could not represent themselves *pro se* because they were being sued solely in their capacity as Trustees.  See Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985); Callaway v. Hornbake, 2012 WL 333769 (M.D. Fla. Feb. 1, 2012).  Accordingly, the Magistrate Judge afforded Heineman and Johnson until October 2, 2014 to obtain counsel admitted to practice in this Court, failing which, the clerk's default would be entered (Doc. 27, p. 2).

Heineman and Johnson have not made any further appearance in this case, and have not retained alternative counsel.  Accordingly, on October 7, 2014, the Court granted

the United States' motion for entry of Clerk's Default (Doc. 28), and a Clerk's Default was entered the following day (Doc. 29).

On April 20, 2015, the United States and the Hunters attended Court-ordered mediation. All parties appeared via counsel. Prior to the mediation, the United States sought and obtained permission from the Court for the attorney attending the mediation conference to appear alone with someone with full settlement authority available for consultation by telephone if needed (Doc. 38). Accordingly, the United States' trial counsel who attended the mediation did not have settlement authority, a fact that counsel mentioned to both the mediator and Mr. Infurna (representing the Hunters) on several occasions. The United States' trial counsel also explained that any proposed settlement terms would need to be reduced to an offer to be formally accepted by the Attorney General and the IRS before a settlement offer could be approved.

The parties reached a tentative oral settlement framework during the course of the mediation. The mediator agreed to prepare and circulate a Memorandum of Understanding ("MOU") summarizing the elements of the settlement framework (Doc. 43, Ex. A). The MOU provided that Lori J. Hunter would consent to a judgment in the amount of $220,000 and Stephen C. Hunter will consent to a judgment in the amount of $140,000. The MOU also provided for Mrs. Hunter to make payments in the amount of $155,000 over 8 months, in exchange for the United States agreeing to accept this negotiated lesser amount to

satisfy all of her outstanding tax liabilities.[4]  The MOU stated that a more formal Mediated Settlement Agreement would be prepared by the Parties (Id.).

On April 28, 2015, the United States sent the Hunters' counsel a letter stating that based on the mediation conference, the United States wished to make a settlement offer to the Hunters (Doc. 43, Ex. B).  The letter contained the same payment provisions for Mrs. Hunter ($155,000 over 8 months in exchange for satisfaction of all outstanding tax liabilities), but listed the consent judgments for the Hunters at higher amounts representing all outstanding taxes, plus accrued interest and penalties ($267,813.88 for Mrs. Hunter and $145,698.59 for Mr. Hunter) (Id.).  The letter concluded by stating that "It is important to understand that unless you receive a formal written acceptance of your offer from an authorized delegate of the Attorney General, the United States is in no way committed to a settlement."  (Id., p. 2).  The Hunters refused to accept the settlement with these new, higher amounts, and the Parties never executed a written settlement agreement.

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying this standard, the Court must examine the materials on file and record evidence "in the light most favorable to the nonmoving party."  Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th

---

[4]The MOU did not contain any negotiated amount for Mr. Hunter.

Cir. 1988).  When faced with a "properly supported motion for summary judgment [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."  Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

At the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511 (1986).  Some degree of factual dispute is expected, but to successfully counter a motion for summary judgment the factual dispute must "affect the outcome of the suit" and must be "such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248, 106 S.Ct. at 2510.

## Discussion

### A.    The United States is Entitled to Judgment Against the Hunters

"An 'assessment' is a procedure in which the I.R.S. records the liability of the taxpayer in I.R.S. files."  Behren v. United States, 82 F.3d 1017, 1018 n. 1 (11th Cir.1996) (citing 26 U.S.C. § 6203; 26 C.F.R. § 301.6203-1).  "In reducing [a tax] assessment to judgment, the Government must first prove that the assessment was properly made."

11

United States v. White, 466 F.3d 1241, 1248 (11th Cir. 2006).  Submission of Certificates of Assessment creates a presumption that the assessments were proper.  Id., United States v. Chila, 871 F.2d 1015, 1017-18 (11th Cir. 1989).   "Once the Form is provided, the taxpayer must then prove that the assessment is erroneous in order to prevail." White, 466 F.3d at 1248.  The Certificates of Assessment are also sufficient to show the amount of the assessed liability that remains due and owing.    Chila, 871 F.2d at 1017-18.  "Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid." Helvering v. Taylor, 293 U.S. 507, 515, 55 S. Ct. 287, 291 (1935).

The United States has submitted certified copies of the Certificates of Assessment and official transcripts for each tax year at issue in this case, as well as the Declaration of John Hoopes, a Revenue Officer with the IRS, in support of their motion for summary judgment.  (Doc. 41, Exs. 1, A-1 through A-6, and C-1 through C-10).  These documents create a presumption that the amount and existence of the assessments are valid and proper.

In their response, the Hunters do not challenge any of their federal tax liabilities or assessments.  Instead, the Hunters argue that the Parties "successfully arrived at a settlement of all issues" at the April 20, 2015 mediation, and that "[t]here is a genuine issue of material fact in regard to what was agreed upon by the parties at the mediation session and which is set out in the attached Memorandum of Understanding . . . ." (Doc. 43, ¶¶ 2, 15).

The Court is prohibited from affording any weight to the Hunters' argument that this case was settled at mediation (or that a question of fact exists as to whether a settlement was obtained at mediation).  Middle District of Florida Local Rule 9.06(a) requires within seven days of the conclusion of the mediation conference that the mediator "shall file a Mediation Report indicating whether all required parties were present and had authority to settle the case.  The report shall also indicate whether the case settled, was continued with the consent of the parties, or whether the mediator was forced to declare an impasse."  Moreover, when the parties reach an agreement to settle the case, "lead counsel shall promptly notify the Court of the settlement in accordance with Local Rule 3.08, and the Clerk shall enter judgment accordingly."  M.D. Fla. Local Rule 9.06(b).   According to the Hunters, a settlement was reached on April 20, 2015.  However, the mediator never filed a Mediation Report notifying the Court that a settlement was reached, and lead counsel never filed a notice of settlement.  The Hunters also have not submitted any declarations, affidavits, or other testimony from the Mediator concerning the status of a settlement in this case.   Rather, the Hunters waited until June 11, 2015, nearly two months after the mediation conference, to raise the issue of settlement in their response, and as support attached the unsigned MOU and the United States' April 28, 2015 letter.

The Court further notes that it is undisputed that the United States' trial counsel who attended the mediation conference did not have settlement authority, and that the Hunters were aware that any settlement had to be approved by the Attorney General and the IRS. (Doc. 47-1, ¶¶ 3-4, 8).  Indeed, the MOU states that the Parties will "prepare a more formal

13

Mediated Settlement Agreement" at a later date.  (Doc. 43, Ex. A, p. 1).  Mrs. Hunter also

confirmed in her Affidavit that the United States would not sign any agreement until "a

formal Mediated Settlement Agreement" was drafted (Doc. 44, ¶ 6).   Such a formal

agreement was never executed, as the Parties admittedly failed to agree on the amount

of the judgments against the Hunters.  Based on these undisputed facts, the Court finds

as a matter of law that the United States is not bound by the terms of the MOU.  See Klein

v. Commissioner of Internal Revenue, 899 F.2d 1149, 1153 (1th Cir. 1990) (letter from IRS

district counsel making a conditional offer of settlement is not binding because the letter

was not signed by both parties and the counsel who sent the letter was without authority

to formally settle the taxpayer's tax liabilities); Botany Worsted Mills v. United States, 278

U.S. 262, 49 S. Ct. 129 (1928) (attempted informal settlement by subordinate officials with

no authorization to compromise under 26 U.S.C. § 7121 was not binding on the United

States); Reimer v. United States, 441 F.2d 1129, 1130 (5th Cir. 1971) (United States is not

bound by apparent settlement where agent was without authority to compromise taxpayer's

tax liability).

Moreover, in order to accept the Hunters' position (which is not supported by any

legal authority), the Court would have to find that an unsigned, oral agreement is sufficient

to effect a full settlement of this case over the objection of the United States.  This would

violate M.D. Fla. Local Rule 4.15(a), which provides that "No stipulation or agreement

between any parties or their attorneys, the existence of which is not conceded, in relation

to any aspect of any pending case, will be considered by the Court unless the same is

14

made before the Court and noted in the record or is reduced to writing and subscribed by the party or attorney against whom it is asserted."

The Court therefore rejects the Hunters' argument that the Parties settled this case at mediation, and finds that the United States' tax assessments against the Hunters are valid and correct as a matter of law.  The United States is entitled to judgment in its favor and against the Hunters in the amount of the assessments for each tax year.

## B.      Foreclosure of the Federal Tax Liens is Warranted

Section 7403 of the Internal Revenue Code permits the United States to foreclose its tax liens by seeking sale of the property to which its liens are attached:

> The court shall, after the parties have been duly notified of the action, proceed to adjudicate all maters involved therein and finally determine the merits of all claims to and liens upon the property, and in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interest of the parties and of the United States.

26 U.S.C. § 7403(c).

Pursuant to 26 U.S.C. §§ 6321 and 6322, when the Hunters failed to pay their assessed federal tax liabilities for the years at issue in this case, federal tax liens arose on all property and rights to property belonging to them, including the Subject Property.  These liens continue until the liability for the amount assessed is satisfied or becomes unenforceable.  26 U.S.C. §§ 6322, 6502(a).

The Warranty Deed for the Subject Property is in the name of "Stephen C. Hunter and his wife, Lori J. Hunter, as an estate by the entireties." (Doc. 41, Ex. F). It is the law of Florida that "[w]here real property is acquired specifically in the name of a husband and wife, it is considered to be a 'rule of construction that a tenancy by the entireties is created.'" Beal Bank, SSB v. Almand and Associates, 780 So. 2d 45, 54 (Fla. 2001) (quoting First National Bank v. Hector Supply Co., 254 So. 2d 777, 780 (Fla. 1971)). Thus, "[a] conveyance to spouses as husband and wife creates an estate by the entirety in the absence of express language showing a contrary intent." In re Estate of Suggs, 405 So. 2d 1360, 1361 (Fla. 5th DCA 1981) (citing Losey v. Losey, 221 So. 2d 417 (Fla. 1969)).

When property is held as a tenancy by the entireties, "only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf of one spouse alone, and therefore it cannot be reached to satisfy the obligation of only one spouse." Id. (citing Winters v. Park, 91 So. 2d 649, 651 (Fla. 1956)). However, the Supreme Court has held that "federal tax liens may attach to property that cannot be unilaterally alienated." United States v. Craft, 535 U.S. 274, 284, 122 S.Ct. 1414, 1423 (2002). See also United States v. Rodgers, 461 U.S. 677, 103 S.Ct. 2132 (1983). This includes property held by spouses as a tenancy in the entirety. Craft, 535 U.S. at 287-89, 122 S.Ct. at 1425-26. Therefore, at the time the IRS filed its tax liens against the Hunters, those liens property attached to all property rights that the Hunters held, including the Subject Property held as tenants in the entirety, and can be foreclosed upon. See United States v. Guthery, No. 8:07-CV-941-T-27EAJ, 2009 WL 1010431 at *

16

3 (M.D. Fla. April 14, 2009); <u>United States v. Persaud</u>, 235 F.R.D. 696, 703 (M.D. Fla. 2005).

The fact that the Hunters attempted to convey the Subject Property to Heineman and Johnson does not defeat the federal tax liens or preclude foreclosure.  The undisputed material facts demonstrate that Heineman and Johnson hold title to the Subject Property as mere nominees of the Hunters.

A nominee is one who holds bare legal title to property for the benefit of another." <u>Scoville v. United States</u>, 250 F. 3d 1198, 1202 (8th Cir. 2001) (citing Black's Law Dictionary (7th ed.1999)); <u>see also</u> <u>United States v. Gilbert</u>, 244 F. 3d 888, 902 n. 37 (11th Cir. 2001) ("[N]ominee in its commonly accepted meaning connotes the delegation of authority to the nominee in a representative or nominal capacity only, and does not connote the transfer or assignment to the nominee of any property in or ownership of the rights of the person nominating him.") (internal quotation marks omitted).  The nominee theory has been utilized by the Eleventh Circuit for the purposes of imposing federal tax liens; it focuses on the delinquent taxpayer's relationship to the property, because the "[p]roperty of the nominee ... of a taxpayer is subject to the collection of the taxpayer's tax liability." <u>Shades Ridge Holding Co. v. United States</u>, 888 F.2d 725, 728 (11th Cir. 1989).

Since the federal tax lien statute "itself creates no property rights but merely attaches consequences, federally defined, to rights created under state law," we are obliged to "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-

delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." United States v. Craft, 535 U.S. 274, 278 (2002). Florida does not have a bright-line test for determining nominee ownership, see United States v. Ippolito, 838 F. Supp. 2d 1287, 1291 (M.D. Fla. 2012), thus the Court will apply federal law to determine nominee ownership in this case.

In determining whether Heineman and Johnson hold title to the Subject Property as mere nominees of the Hunters, the Court looks to the following factors:

> (1) [W]hether the taxpayer exercised dominion and control over the property; (2) whether the property of the taxpayer was placed in the name of the nominee in anticipation of collection activity; (3) whether the purported nominee paid any consideration for the property, or whether the consideration paid was inadequate; (4) whether a close relationship exists between the taxpayer and the nominee; and (5) whether the taxpayer pays the expenses (mortgage, property taxes, insurance) directly, or is the source of the funds for payments of the expenses.

United States v. Dornbrock, 2008 WL 769065 at * 5 (S.D. Fla. Jan. 17, 2008), aff'd per curium, 309 Fed. Appx. 359 (11th Cir. 2009). The undisputed facts demonstrate the existence of a majority of these factors.

It is undisputed that the Hunters continue to exercise dominion and control over the Subject Property, and pay the expenses related to the property. The Hunters live at the Subject Property, pay property taxes, make mortgage payments, and maintain the property. At the time the Subject Property was transferred to Heineman and Johnson on July 7, 2004, the Hunters were aware of their outstanding federal tax liabilities, and assessments

had already been made.  Moreover, it is undisputed that Heineman and Johnson paid no meaningful consideration for the Subject Property.  <u>See</u> Deposition of Stephen C. Hunter, p. 15 (Doc. 41-29).    Lastly, the Court finds that Heineman's and Johnsons' failure to appear in this case, coupled with the entry of Clerk's defaults, renders all of these facts as true and undisputed as they pertain to these Defendants.[5]  Thus, the Court finds as a matter of law that Heineman and Johnson held the Subject Property as mere nominees of the Hunters, and the federal tax liens shall attach to the Subject Property and foreclosure is appropriate.

## <u>CONCLUSION</u>

Accordingly, for the reasons set forth above it is hereby ORDERED that:

1.    The United States' Motion for Summary Judgment Against Lori J. Hunter and Stephen C. Hunter and Default Judgment Against Dale Scott Heineman and Kurt F. Johnson (Doc.  41) is GRANTED.

2.    The Court ADJUDGES and DECREES that Defendant Stephen C. Hunter is indebted to the United States in the amount of $146.080.79 as of May 27, 2015 for his income tax liabilities for the tax years 1997, 1998, 1999, 2000, and 2003,  with interest and penalties accruing as allowed by law thereafter.  The Clerk is directed enter a money judgment accordingly.

---

[5] <u>See</u> <u>Buchanan v. Bowman</u>, 829 F.2d 359, 361 (11th Cir. 1987).

3.      The Court ADJUDGES and DECREES that Defendant Lori J. Hunter is indebted to the United States in the amount of $271,348.57 as of May 27, 2015 for her income tax liabilities for the tax years 1997, 1998, 2000, 2002, 2003, and 2004 through 2009, with interest and penalties accruing as allowed by law thereafter.  The Clerk is directed enter a money judgment accordingly.

4.      Within fourteen (14) days from the date of this Order, the United States shall file a proposed order of judgment and foreclosure decree for the Subject Property.  The Clerk is directed to remove this case from the trial calendar for the term commencing August 3, 2015 and to cancel the pretrial conference.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 2nd day of July, 2015.

_____

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Dale Scott Heineman and Kurt F. Johnson, *pro se*
             Mari Jo Taylor

20